**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**

FOUNDATION TO SUPPORT ANIMAL
PROTECTION D/B/A PETA
FOUNDATION,

       Movant,

v.

VITAL FARMS, INC.,

       Respondent.

Case No. _____

Related Case No.: 1:21-cv-00447 (W.D. Tex.)

**BRIEF IN SUPPORT OF NONPARTY FOUNDATION TO
SUPPORT ANIMAL PROTECTION D/B/A PETA FOUNDATION'S
MOTION TO QUASH NONPARTY SUBPOENA**

**TABLE OF CONTENTS**

**Page**

I.     OVERVIEW .......................................................................................................... 1

II.    FACTUAL BACKGROUND .............................................................................. 2

    1.    RELATIONSHIP OF PETA AND PETA FOUNDATION .................................. 2

    2.    THE UNDERLYING LAWSUIT ................................................................. 4

    3.    THE SUBPOENA .................................................................................. 5

III.   LEGAL STANDARD ........................................................................................ 7

IV.   ARGUMENT ...................................................................................................... 9

    1.    REQUEST 3 IS A PLAINLY IMPROPER ATTEMPT TO OBTAIN
          OPPOSING COUNSEL'S LITIGATION FILE ...................................................... 9

    2.    REQUESTS 1 AND 2 PLAINLY SEEK PRIVILEGED
          COMMUNICATIONS AND ARE OVERBROAD ............................................ 14

    3.    THE OVERBROAD DEFINITIONS ARE ALSO IMPROPER ........................ 16

    4.    THE SUBPOENA IMPOSES A DISPROPORTIONATE BURDEN ............... 17

    5.    THE SUBPOENA WAS ISSUED FOR AN IMPROPER PURPOSE .............. 19

    6.    VITAL FARMS' ABUSIVE SUBPOENA SHOULD BE SANCTIONED ....... 21

V.    CONCLUSION ................................................................................................ 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allen v. Brown Advisory, LLC*,
  No. CV 3:20-MC-00008, 2020 WL 5603760 (W.D. Va. Sept. 17, 2020)..........................8, 11

*In re Am. Nurses Ass'n*,
  643 F. App'x 310 (4th Cir. 2016) ...........................................................................................18

*Collins v. Tri-State Zoological Park of W. Maryland, Inc.*,
  514 F. Supp. 3d 773 (D. Md. 2021).........................................................................................3

*F.D.I.C. v. U.S. Fire Ins. Co.*,
  50 F.3d 1304 (5th Cir. 1995) ..................................................................................................20

*Frye v. Dan Ryan Builders, Inc.*,
  No. 3:10-CV-39, 2011 WL 666326 (N.D.W. Va. Feb. 11, 2011) ....................................10, 11

*Gilmore v. Jones*,
  339 F.R.D. 111 (W.D. Va. 2021).......................................................................................14, 17

*Hickman v. Taylor*,
  329 U.S. 495 (1947)...........................................................................................................10, 12

*Kirzhner v. Silverstein*,
   870 F. Supp. 2d 1145 (D. Colo. 2012)................................................................................9, 10

*Legal Voice v. Stormans Inc.*,
  738 F.3d 1178 (9th Cir. 2013) ................................................................................................18

*Lugones v. Pete and Gerry's Organic, LLC*,
  440 F. Supp. 3d 226 (S.D.N.Y. 2020).......................................................................................3

*Med. Components, Inc. v. Classic Med., Inc.*,
  210 F.R.D. 175 (M.D.N.C. 2002) ...........................................................................................21

*Moody v. City of Newport News*,
  No. 4:14-CV-99, 2016 WL 9000275 (E.D. Va. Jan. 20, 2016) ...............................................12

*NAACP v. Claiborne Hardware Co.*,
  458 U.S. 886 (1982)................................................................................................................20

*Navient Sols., LLC v. L. Offs. of Jeffrey Lohman, P.C.*,
  No. 119CV461, 2020 WL 6379233 (E.D. Va. Sept. 4, 2020) ................................................11

314337603.8

*New York Times Co. v. Sullivan*,
376 U.S. 254 (1964)..................................................................................................20

*Nicholas Usler, et al. v. Vital Farms, Inc.*,
Case No. 1:21-cv-00447 (W.D. Tex. May 20, 2021) ...........................................1, 7

*People for Ethical Treatment of Animals, Inc. v. Lowe*,
No. CIV-21-0671-F, 2022 WL 576560 (W.D. Okla. Feb. 25, 2022) .......................3

*People for Ethical Treatment of Animals, Inc. v. Shore Transit*,
580 F. Supp. 3d 183 (D. Md. 2022)..........................................................................3

*Shelton v. Am. Motors Corp.*,
805 F.2d 1323 (8th Cir. 1986) .............................................................................8, 11

*Singletary v. Sterling Transp. Co.*,
289 F.R.D. 237 (E.D. Va. 2012) ..............................................................................7

*Sporck v. Peil*,
759 F.2d 312 (3d Cir. 1985)....................................................................................11

*In re Subpoena Duces Tecum to AOL, LLC*,
550 F.Supp.2d 606 (E.D.Va. 2008) ............................................................13, 14, 15

*Virginia Dep't of Corr. v. Jordan*,
921 F.3d 180 (4th Cir. 2019) ........................................................................ *passim*

*XTO Energy, Inc. v. ATD, LLC*,
No. CIV 14-1021, 2016 WL 1730171 (D.N.M. Apr. 1, 2016)...........................8, 12

**Statutes**

15 U.S.C. §§ 1051 *et seq.*...........................................................................................14

DC Code §§ 28-3901 *et seq.* .....................................................................................14

**Other Authorities**

Fed. R. Civ. P. 26(b)(1)........................................................................................7, 9, 17

Fed. R. Civ. P. 26(c)(1)..............................................................................................8, 19

Fed. R. Civ. P. 26(g)(1)(B)(ii) ..................................................................................8, 19

Fed. R. Civ. P. 45(d)(1)........................................................................................7, 16, 21

Fed. R. Civ. P. 45(d)(3)..................................................................................................7

iii

Foundation to Support Animal Protection d/b/a PETA Foundation ("PETA Foundation") respectfully brings this Motion to Quash under Federal Rule of Civil Procedure 45(d)(3), requesting that this Court quash the nonparty subpoena *duces tecum* issued by Vital Farms, Inc. ("Vital Farms") dated November 18, 2022 (with all attachments, the "Subpoena"; attached hereto as Ex. A[1]), in connection with an ongoing civil lawsuit to which PETA Foundation is not a party, but is one of three firms whose lawyers represent plaintiffs: *Nicholas Usler, et al. v. Vital Farms, Inc.*, Case No. 1:21-cv-00447 (W.D. Tex. May 20, 2021) ("the Lawsuit").

## I.    OVERVIEW

This is one of two plainly improper subpoenas that Vital Farms has issued in a coordinated campaign to target PETA, its perceived adversary, and the Foundation to Support Animal Protection d/b/a PETA Foundation ("PETA Foundation"), which Vital Farms alleges is PETA's "captured legal arm."  *Usler* Dkt. 56-1 at 3.[2]  Crucially, PETA Foundation lawyers represent the plaintiffs in the underlying Lawsuit against Vital Farms, a putative class of consumers who allege that Vital Farms falsely advertises its eggs as "humane" while engaging in cruel, abusive treatment of its animals.  PETA is not a party to the suit, but it is a well-known animal protection and vegan advocacy organization, who Vital Farms has identified as a corporate and political adversary, and who is also a legal client of PETA Foundation.  Vital Farms targets both entities for their perceived slights against Vital Farms' business—either through advocacy efforts (PETA) or through

---

[1] All references to Exhibits herein refer to the Exhibits to the Alpert Declaration filed herewith.

[2] "*Usler* Dkt. __" refers to the corresponding docket entry in the underlying lawsuit, *Nicholas Usler, et al. v. Vital Farms, Inc.*, Case No. 1:21-cv-00447 (W.D. Tex. May 20, 2021). For the Court's convenience, key filings are attached to the Alpert Declaration to this Brief. The Complaint (Dkt. 1) is attached as Exhibit E; the Motion to Dismiss (Dkt. 17) is attached as Exhibit F; the Response to Motion to Dismiss (Dkt. 22) is attached as Exhibit G; the Report and Recommendation (Dkt. 26) is attached as Exhibit H; the Rule 26(f) Report (Dkt. 36) is attached as Exhibit I; the Memorandum in Support of Motion to Quash (Dkt. 56-1) is attached as Exhibit J; the Response to Motion to Quash (Dkt. 60) is attached as Exhibit K.

prosecution of the Lawsuit (PETA Foundation).

Both subpoenas reflect Vital Farms' improper campaign to harass, burden, and seek confidential information from political and legal adversaries.  In this Motion, PETA Foundation moves to quash the Subpoena issued against it, which incredibly demands the production of its entire litigation file in the Lawsuit, along with other privileged communications.  Separately, PETA will be moving to quash the Subpoena issued against it, which demands production of every single PETA file related to its vegan advocacy against egg consumption, and expressly demands all of its confidential internal strategy planning and deliberation documents.

Third-party discovery is available to enable parties to a suit to obtain nonprivileged information not otherwise available to them, but relevant to resolving the issues in the case.  Third-party discovery is not available to serve as a vehicle to harass, annoy, or burden nonparties.  And third-party discovery is certainly not available to serve as a vehicle to harass, annoy, burden, or seek privileged materials from the counsel representing an opposing party.

## II.     FACTUAL BACKGROUND

### 1.     RELATIONSHIP OF PETA AND PETA FOUNDATION

PETA is an animal protection organization that advocates for a vegan diet, and has commented publicly on the cruel conditions of animals raised for food, including egg-laying hens. *See, e.g.*, The Egg Industry, PETA.ORG, https://www.peta.org/issues/animals-used-for-food/factory-farming/chickens/egg-industry/ (last accessed Dec. 13, 2022).  As a result of this advocacy, Vital Farms has identified PETA as a corporate adversary and threat to its egg-selling business.  *See, e.g.*, *Usler* Dkt. 56-1 at 3 ("PETA actively advocates to steer Vital Farms' customers away from their products and toward PETA-approved products through the use of PETA's

services, and in so doing actively competes against Vital Farms' commercial interests").[3]

PETA Foundation is a separate corporate entity.  It is a tax-exempt public charity that provides legal and administrative support services to various animal protection organizations, including PETA.  *See* Decl. ¶ 4.[4]  For instance, PETA Foundation provides IT, Audio/Visual, Human Resources, mailroom, and other administrative functions, as well as legal services.  *Id.* PETA Foundation litigators function similarly to a boutique law firm in furtherance of its mission of animal protection, serving as litigation counsel in numerous lawsuits to various plaintiffs, including as counsel to PETA and as counsel to individual plaintiffs.  *Id.* ¶ 5.  PETA Foundation litigators have represented individual plaintiffs in lawsuits, including the plaintiffs in the Lawsuit. *See, e.g., Collins v. Tri-State Zoological Park of W. Maryland, Inc.*, 514 F. Supp. 3d 773 (D. Md. 2021); *Lugones v. Pete and Gerry's Organic, LLC*, 440 F. Supp. 3d 226 (S.D.N.Y. 2020).  PETA Foundation litigators also represent PETA in numerous past and present lawsuits, such as *People for Ethical Treatment of Animals, Inc. v. Shore Transit*, 580 F. Supp. 3d 183 (D. Md. 2022) and *People for Ethical Treatment of Animals, Inc. v. Lowe*, No. CIV-21-0671-F, 2022 WL 576560 (W.D. Okla. Feb. 25, 2022).

In this respect, the PETA Foundation is similar to a number of other entities associated

---

[3] *See also* Alpert Decl. Ex. C, Meyer Letter to Alpert ("Letter") at 9 (alleging that PETA, in conjunction with PETA Foundation, "seeks to shape consumer demand for eggs, including Vital Farms' eggs").  Vital Farms' 10-K similarly reports facing "pressure from animal rights groups to require all companies that supply food products to operate their business in a manner that treats animals in conformity with certain standards developed or approved by these animal rights groups," and warns that "[i]f consumer preferences shift away from animal-based products for these reasons, because of a preference for plant-based products or otherwise, our business, financial condition and results of operations could be adversely affected."  Vital Farms, Annual Report (Form 10-K) (March 10, 2022), at 25, https://investors.vitalfarms.com/static-files/7ef846bd-cebd-45eb-bc7f-ec04b9f01d86.

[4] All references to "Decl." herein refer to the Declaration of Asher Smith filed herewith, unless otherwise specified.

with advocacy nonprofits whose functions include commercial and noncommercial public interest litigation, such as the AARP Foundation or the ACLU Foundation.[5]  As relevant here, PETA Foundation lawyers represent plaintiffs in the underlying Lawsuit against Vital Farms.

### 2.    THE UNDERLYING LAWSUIT

In the Lawsuit, a putative class of consumer plaintiffs allege that Vital Farms, an egg producer, falsely advertises its eggs as "humane" while engaging in numerous practices that harm and kill the animals used for egg production, including grinding male chicks to death shortly after birth; searing off chicks' beaks without anesthesia; housing animals at high density; and selling prematurely "spent" hens to painful slaughter.  *Usler* Dkt. 1.  Therefore, facts relevant to the case include: (i) whether Vital Farms advertised its products as "humane"; (ii) whether Vital Farms engages in the alleged cruel practices; (iii) whether use of those practices is "humane," a term that plaintiffs allege they define consistent with relevant caselaw, *Usler* Dkt. 22 at 13–14; *Usler* Dkt. 26 at 8–9, and that Vital Farms alleges is defined by its third-party certifier HFAC, *Usler* Dkt. 17 at 4–5; *Usler* Dkt. 26 at 7; and (iv) whether the plaintiffs and consumers purchasing Vital Farms' products were deceived by Vital Farms' representations of "humane" treatment into paying premium prices.

Vital Farms moved to dismiss the suit, alleging that suit was a "wolf in sheep's clothing" secretly brought by PETA, in furtherance of "PETA's extremist agenda" and "PETA's demands [that] hens have equal rights with humans."  *Usler* Dkt. 17 at 1–2.  Vital Farms provided no basis for these claims, and could not; PETA is not a party to the suit, which was brought by individual

---

[5] *See, e.g.*, *What We Do: Legal Advocacy*, AARP Foundation, https://www.aarp.org/aarp-foundation/our-work/legal-advocacy/ (last viewed Dec. 28, 2022); *Giving to the American Civil Liberties Union and the American Civil Liberties Foundation: What is the Difference?*, ACLU, https://action.aclu.org/content/giving-american-civil-liberties-union-and-american-civil-liberties-union-foundation-what (last viewed Dec. 28, 2022).

consumers on behalf of a putative class.  Accordingly, the court denied Vital Farms' motion, and observed that Vital Farms' arguments "misse[d] the gravamen of Plaintiffs' claim[.]"  *Usler* Dkt. 26 at 6.  After the case proceeded to discovery, Vital Farms continued to rail against PETA (still not a party to the suit) and PETA Foundation, who are some of the plaintiffs' lawyers, seeking to prevent PETA Foundation attorneys from viewing confidential materials produced in discovery because, they allege, PETA Foundation is a "captured services provider" who shares "a social advocacy mission to publicly dissuade people from eating eggs," and who they allege will use materials from the suit "collaterally to advance PETA's anti-egg stance."  *Usler* Dkt. 36, at 6. Vital Farms has provided no substantiation nor good faith basis for any of these accusations—which necessarily assume PETA Foundation's attorneys will abandon their ethical obligations and intentionally violate an agreed protective order entered in the underlying case—and continues to unjustifiably attack PETA Foundation counsel in that suit.  *See, e.g.*, *Usler* Dkt. 60 at 10 (incorrectly attributing statement to PETA Foundation counsel).

If anything, it appears that Vital Farms was projecting its concerns about discovery-related malfeasance.  Unsuccessful in its verbal attacks on PETA and PETA Foundation, Vital Farms has sought a new outlet that can impose a far greater burden on the entities: issuing burdensome, irrelevant subpoenas under the guise of third-party discovery.

## 3.    THE SUBPOENA

The Subpoena served on PETA Foundation demands production of three categories of documents.  The demands seek obviously privileged materials, including PETA Foundation's entire litigation file in the Lawsuit, along with other privileged communications.

Requests 1 and 2 demand disclosure of PETA Foundation's correspondence with PETA. They seek any documents that so much as mention "Vital Farms," and which were received from,

or which reflect communications with, PETA.   Specifically, Request 1 demands "All COMMUNICATIONS between YOU and PETA concerning, referencing or related to VITAL FARMS"; and Request 2 demands "All DOCUMENTS from PETA concerning, referencing or related to VITAL FARMS."  Ex. A.

Request 3 seeks PETA Foundation's entire litigation file in the underlying Lawsuit, which PETA Foundation lawyers are currently actively prosecuting against Vital Farms.  Specifically, it demands PETA Foundation produce: "All DOCUMENTS and COMMUNICATIONS concerning, referencing or related to the LAWSUIT."  Ex. A.  The language speaks for itself.  Although counsel for PETA Foundation raised this clear violation of privilege to counsel for Vital Farms in its formal objections and at its meet and confer, Vital Farms has responded that PETA Farms must individually log every document subject to privilege (which, again, given the plain language of the demand, Vital Farms knows will include its entire litigation file).  *See* Letter at 8 ("If the Foundation has responsive records that it believes are subject to a claim of privilege or work product protection, Vital Farms asks that the Foundation submit a privilege log so that Vital Farms can specifically evaluate the claims.").

While Vital Farms claims that the Subpoena also seeks some nonprivileged documents from the non-legal administrative functions at PETA Foundation, there is no basis to think that documents in the possession of administrative departments of a non-party entity, whose only connection to the Lawsuit is *representing plaintiffs*, would have information relevant to the facts at issue in the case.  These requests are clearly aimed at PETA Foundation's litigators.  There is no reason to believe that documents in the possession of PETA's *e.g.* Human Resources or mailroom departments so much as mentioning the Lawsuit or Vital Farms would contain information relevant to these claims

6

### 4.      MEET AND CONFER

PETA Foundation timely provided Vital Farms with objections on December 2, 2022, identifying among other concerns, objections on privilege, relevance, and overbreadth grounds. Ex. B.   Vital Farms sent a formal response to PETA Foundation's objections, and the parties met and conferred.   During the parties' correspondence, Vital Farms agreed to extend the date of compliance for its subpoena to January 3, 2023.   Vital Farms offered to add an applicable time limit to its requests, but otherwise refused to narrow its demands.   Unable to secure protection from this improper Subpoena, PETA Foundation timely files this Motion to Quash in the district where compliance is required.   Fed. R. Civ. P. 45(d)(3).

## III.      LEGAL STANDARD

The issuer of a nonparty subpoena must "reasonable steps to avoid imposing undue burden or expense" on the subpoena recipient, by tailoring its requests to the identification of relevant, nonprivileged facts at issue in the underlying litigation.   Fed. R. Civ. P. 45(d)(1); *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 190 (4th Cir. 2019).   Failure to avoid imposing an undue burden may result in sanctions, including reasonable attorney's fees.   Fed. R. Civ. P. 45(d)(1).   A nonparty subpoena *must* be quashed if it subjects a person to undue burden, or requires the disclosure of privileged information.   *Id.* 45(d)(3)(A).   A nonparty subpoena may be quashed if it requires the disclosure of confidential information.   *Id*. 45(d)(3)(B).

A Rule 45 subpoena is also subject to the Rule 26 requirements and limitations applicable to all discovery.   *Singletary v. Sterling Transp. Co.*, 289 F.R.D. 237, 240–41 (E.D. Va. 2012). A party may only "obtain discovery regarding any *nonprivileged* matter that is relevant to any party's claim or defense and proportional to the needs of the case," giving consideration to "the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."   Fed. R. Civ. P. 26(b)(1) (emphasis added).   Discovery is

also not available where the request was "interposed for any improper purpose, such as to harass . . . or needlessly increase the cost of litigation," or to "annoy[ ], embarrass[ ], or oppress[ ]" the recipient.  Fed. R. Civ. P. 26(g)(1)(B)(ii) & *id.* 26(c)(1).

"Nonparties faced with civil discovery requests deserve special solicitude"; they "should not be drawn into the parties' dispute unless the need to include them outweighs the burdens of doing so, considering their nonparty status." *Jordan*, 921 F.3d at 194.  To assess whether a nonparty subpoena is proper, "courts should consider not just the relevance of information sought, but the requesting party's need for it": "[t]he information sought must *likely* (not just *theoretically*) have marginal benefit in litigating important issues," and that benefit must be more than *de minimis*.  *Id.* at 189 (emphasis added).

The burden is particularly high for discovery sought from opposing counsel.  *Allen v. Brown Advisory, LLC*, No. CV 3:20-MC-00008, 2020 WL 5603760, at *2 (W.D. Va. Sept. 17, 2020) ("When discovery is sought from counsel for an opposing party, additional threshold considerations come into play.")  The "harassing practice" of seeking discovery from opposing counsel "appears to be an adversary trial tactic that does nothing for the administration of justice but rather prolongs and increases the costs of litigation, demeans the profession, and constitutes an abuse of the discovery process."  *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1330 (8th Cir. 1986); *see also Allen*, 2020 WL 5603760, at *2 (applying *Shelton* to subpoena *duces tecum* issued to opposing counsel); *XTO Energy, Inc. v. ATD, LLC*, No. CIV 14-1021, 2016 WL 1730171, at *31 (D.N.M. Apr. 1, 2016) (same).

While the moving party bears the burden of proof and persuasion on a motion to quash, "they are not terribly difficult burdens to meet if the requesting party cannot articulate its need for the information and address obvious alternative sources."  *Jordan*, 921 F.3d at 189 n.2.

## IV.    ARGUMENT

This subpoena must be quashed under Rule 45(d)(3)(A) because it both demands plainly privileged materials, and imposes an undue burden on PETA Foundation.  The Subpoena's demands are not "proportional to the needs of the case, considering . . . whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  They are not calculated to lead to the discovery of relevant and not privileged materials.  Instead, the Subpoena plainly encompasses and demands disclosure of PETA Foundation's entire litigation file in the lawsuit its lawyers are prosecuting against Vital Farms, as well as any communications PETA Foundation lawyers have had with legal client, PETA, to the extent they so much as mention Vital Farms.  They are plainly designed to seek privileged files and to harass opposing counsel with burdensome discovery.  And Vital Farms' pretextual arguments to justify the Subpoena reveal that its demands are overbroad as well.

### 1.    REQUEST 3 IS A PLAINLY IMPROPER ATTEMPT TO OBTAIN OPPOSING COUNSEL'S LITIGATION FILE

An unjustified demand for opposing counsel's litigation file and privileged materials is a form of discovery abuse.  Such tactics have been rightly recognized as an "ugl[y] . . . type of discovery."  *Kirzhner v. Silverstein*, 870 F. Supp. 2d 1145, 1151 (D. Colo. 2012), *on reconsideration in part*, No. 09-CV-02858-RBJ-BNB, 2012 WL 1222368 (D. Colo. Apr. 10, 2012).  And the Subpoena's Request 3 plainly requires production of opposing counsel's entire litigation file.

Request 3 demands PETA Foundation produce "All DOCUMENTS and COMMUNICATIONS concerning, referencing or related to the LAWSUIT."  Ex. A.  On its face, this would require opposing counsel to produce every one of its documents, and the entirety of its files, "concerning, referencing, or related to" the Lawsuit.  This is plainly improper.

9

Counsel's possession of litigation-related materials in its ongoing and active lawsuit necessarily includes the files that counsel maintains in the course of prosecuting that suit. These files contain and reflect counsel's legal strategy and selection of facts marshalled in support of that strategy. *See Hickman v. Taylor*, 329 U.S. 495, 510 (1947) (barring "unwarranted inquiries into the files and the mental impressions of an attorney" as protected work product); Decl ¶¶ 13–17. They also necessarily include counsel's correspondence with clients it represents about that suit, and its correspondence with co-counsel in furtherance of the litigation of the suit. Decl. ¶ 15. The work-product and attorney-client protected nature of these materials is self-evident.

Rather than tailor or revise this request when confronted with the known certainty that the request would sweep in privileged materials, Vital Farms demands PETA Foundation "submit a privilege log so that Vital Farms can specifically evaluate the claims." Letter at 8. But that is no solution to the obvious privilege intrusion. *See Kirzhner*, 870 F. Supp. 2d at 1151 (affirming quashing of subpoena seeking "documents in the files of plaintiff's trial counsel" and "privilege log detailing the documents withheld and any redactions from documents produced"); *see also Frye v. Dan Ryan Builders, Inc.*, No. 3:10-CV-39, 2011 WL 666326, at *7 (N.D.W. Va. Feb. 11, 2011) (finding "no privilege log is necessary" where Rule 45 subpoena would require production of "entire litigation file," as "[b]oth attorney-client privilege and work product doctrine are in the entire litigation file").

First, given the nature of the demand (counsel's entire litigation file) it is clear that the privilege log would be substantial and time-consuming and burdensome to prepare. Decl. ¶¶ 16, 18–19. Second, requiring counsel to record a log of every document in its litigation file is still an intrusion into the work-product protections afforded an attorney's litigation file: it would amount to a forced disclosure of the identity of every single document that counsel has chosen to produce

10

or maintain in its possession, necessarily reflecting counsel's mental impressions and litigation strategy in its selection of materials to include. *See* Decl ¶ 17; *see also Frye*, 2011 WL 666326, at *7; *Shelton*, 805 F.2d at 1326 (where "the deponent is opposing counsel and has engaged in a selective process of compiling documents from among voluminous files in preparation for litigation, the mere acknowledgment of the existence of those documents would reveal counsel's mental impressions, which are protected as work product"); *Sporck v. Peil*, 759 F.2d 312, 315 (3d Cir. 1985) ("the selection process itself represents defense counsel's mental impressions and legal opinions as to how the evidence in the documents relates to the issues and defenses in the litigation").

Vital Farms must demonstrate a compelling need to subpoena documents from opposing counsel—which it cannot do.  Vital Farms must show that: "(1) no other means exist to obtain the information than to depose [or, in this case, propound the discovery on] opposing counsel . . . (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Shelton*, 805 F.2d at 1327.  The *Shelton* test has been widely adopted by district courts in this Circuit, and applied to discovery demands on opposing counsel for documents as well as for depositions. *See, e.g.*, *Navient Sols., LLC v. L. Offs. of Jeffrey Lohman, P.C.*, No. 119CV461, 2020 WL 6379233, at *5 (E.D. Va. Sept. 4, 2020) ("federal courts widely use" the *Shelton* test); *Allen*, 2020 WL 5603760, at *2 (applying *Shelton* test to subpoena *duces tecum*, noting "document requests are the substantial equivalent of depositions for these purposes and are just as problematic as the deposition requests, and for the same reasons").

First, Vital Farms has not established with any specificity or particularity what information it seeks (other than generally every document and file opposing counsel possesses related to the Lawsuit), and it has not set forth any basis to suggest that "no other means exist to obtain" such

11

(unspecified) information.  For instance, it has "provided no facts or statements indicating [it] attempted to obtain the information from other sources and was unsuccessful in doing so." *Moody v. City of Newport News*, No. 4:14-CV-99, 2016 WL 9000275, at *2 (E.D. Va. Jan. 20, 2016); *see also XTO Energy, Inc.*, 2016 WL 1730171, at *32 (defendant "does not show that it attempted to discover the information it seeks by searching its own records or through any other means before sending the Subpoena, and the broad request imposes a considerable logistical burden on [plaintiff's counsel]").

Second, Vital Farms has not demonstrated that this (unspecified) information which is found in plaintiffs' counsel's litigation file and which it demands disclosure of is both relevant and not privileged.  Instead, given the nature of the request, it is unlikely that the (unspecified) information it seeks is both not privileged and also relevant to the case.

Finally, Vital Farms cannot show how this (unspecified) information from opposing counsel's litigation file is crucial to their preparation of the case.  Vital Farms' demand that PETA Foundation disclose the entire contents of its litigation file is a bold attempt to "open[ ]" "all the files and mental processes of [plaintiffs'] lawyers . . . to the free scrutiny of their adversaries," *Hickman*, 329 U.S. at 514, a ploy specifically and repeatedly rejected by courts.

Vital Farms responds that its demand is proper because it seeks *not only* files from PETA Foundation's legal department, but *also* files from all of its other support departments.  Letter at 8–9.  This lacks merit.  There is no reason to believe that documents in the possession of an administrative support department at nonparty PETA Foundation, whose only connection to the Lawsuit is *its litigators serving as counsel to plaintiffs*, would be relevant to any fact at issue in the Lawsuit (*e.g.* whether Vital Farms made its alleged representations of "humane" treatment, and whether it engaged in the alleged inhumane practices).  For instance, this request would

encompass a Human Resources employee review of a PETA Foundation attorney working on the Lawsuit, to the extent it mentions the Lawsuit among the employee's responsibilities.  Decl ¶ 22. It would also encompass duplicative versions of documents sent to the printing and mailroom resources that mention the Lawsuit.  *Id.*  Nonparty PETA Foundation's internal comments, references to, or mentions of the Lawsuit have no bearing on the facts at issue in the suit.

Vital Farms provides this perplexing explanation: "[h]ow the Foundation uses materials or information related to the litigation is relevant to understand reasonable consumers' knowledge and expectations related to the egg industry, and also to evaluating the Plaintiffs' knowledge and expectations."  Letter at 9.  This is facially strained, attenuated, and absurd.  Documents in the PETA Foundation's non-legal administrative departments referencing the Lawsuit do not provide insight into "reasonable consumers' knowledge and expectations"; let alone, in any nonprivileged way, "the Plaintiffs' knowledge and expectations," which documents must inevitably reside in plaintiffs' counsel's privileged files.  It is also difficult to understand how private confidential files internal to PETA Foundation should provide information about the "knowledge" of "reasonable consumers," which knowledge must be, by definition, public.

If "reasonable consumers' knowledge" were the Subpoena's true aim (though it appears to be mere pretext), then Request 3 is certainly overbroad as well.  A subpoena is overbroad where it "does not limit the [documents] requested to those containing subject matter relevant to the underlying action."  *In re Subpoena Duces Tecum to AOL, LLC*, 550 F.Supp.2d 606, 612 (E.D.Va. 2008).  Request 3 plainly demands any document so much as referencing or in any way related to the Lawsuit in general, and is in no way tailored to the purpose of identifying information about "reasonable consumers" and their "knowledge [or] expectations."  This Request does not seek documents about consumers' expectations: it seeks opposing counsel's litigation file.

## 2.  REQUESTS 1 AND 2 PLAINLY SEEK PRIVILEGED COMMUNICATIONS AND ARE OVERBROAD

Requests 1 and 2 seek any correspondence between PETA Foundation and PETA, its known legal client, that so much as mention "Vital Farms."  *See* Ex. A Request 1 ("All COMMUNICATIONS between YOU and PETA concerning, referencing or related to VITAL FARMS"); *id.* Request 2 ("All DOCUMENTS from PETA concerning, referencing or related to VITAL FARMS.").

Vital Farms *knows* that PETA Foundation regularly acts as legal counsel to PETA (since it even accuses the organization of being PETA's "captured legal arm," *supra* §§ I, II.2).  And Vital Farms knows PETA is an animal protection and vegan advocacy organization that campaigns to dissuade the consumption of eggs and promote plant-based alternatives.  *Id.*  PETA Foundation provides legal services to PETA and serves as its legal counsel.  *Id.*  On its face, these requests would sweep in any communication between PETA and its counsel, for instance, seeking legal advice about potential advocacy or other litigation efforts related to eggs, to the extent those communications referenced Vital Farms, a large egg producer.  Decl. ¶ 12; *cf.* 15 U.S.C. §§ 1051 *et seq.* (allowing non-consumer third parties to sue for false advertising); DC Code §§ 28-3901 *et. seq.* (allowing non-profit standing to sue for false advertising).

Moreover, in addition to seeking privileged communications, these Requests are plainly overbroad.  They do "not limit the [documents] requested to those containing subject matter relevant to the underlying action."  *In re Subpoena*, 550 F.Supp.2d at 612.  Vital Farms "has not articulated why [it] needs such wide-ranging discovery from these nonparties, and [it] has not shown that [it] made any effort to tailor those requests to avoid sweeping in irrelevant information."  *Gilmore v. Jones*, 339 F.R.D. 111, 126 (W.D. Va. 2021).  And they are "likely to require production of a massive number of 'wholly irrelevant documents.'"  *Id.* at 125 (quoting

*Eshelman v. Puma Biotechnology, Inc.*, No. 7:16-CV-18-D, 2017 WL 5919625, at *7 (E.D.N.C. Nov. 30, 2017)).

As with Request 3, to the extent Vital Farms seeks PETA Foundation's *non-legal department* files, it is not clear why documents in the possession of an administrative support department that so much as *mention* Vital Farms would be relevant to any fact at issue in the Lawsuit. But this is a false advertising suit, and relevant issues in the case include whether Vital Farms represented its products as "humane"; engaged in specified cruel acts; and thereby deceived consumers. Documents in PETA Foundation's administrative departments can lend no insight into those issues (let alone sufficient information to be proportional).

Vital Farms offers several explanations for the relevance of these requests, none of which are availing. It claims "[t]o the extent that PETA has investigated Vital Farms' egg practices and pricing (for instance), documents responsive to this request may be relevant . . ." Letter at 8. It also, more vaguely, claims that "[d]ocuments responsive to this request may also be relevant to the questions of both the expectations of the reasonable consumer and of Plaintiffs." *Id.*

But a broad demand for production of any document that so much as mentions Vital Farms is not tailored to yield either category of information—especially not when it is directed to PETA Foundation's administrative support departments. For instance, it is not clear how a demand for all documents mentioning Vital Farms will provide information about consumer expectations; and it defies imagination to understand how the demand is "tailored" to that purpose.

Vital Farms also claims that discovery of the PETA Foundation is necessary because "PETA and the Foundation are inherently intertwined . . . Because of their close relationship (which again includes the Foundation providing functions like IT and media to PETA), Vital Farms cannot know precisely how the organizations differentiate personnel or functions and thus, in order

15

to do its due diligence in discovery, Vital Farms must obtain discovery from the Foundation."
Letter at 8.  But this is also unavailing, because the material Vital Farms demands is still not
discoverable if possessed by PETA, as explained in PETA's Motion to Quash.

3.      THE OVERBROAD DEFINITIONS ARE ALSO IMPROPER

In addition to the Requests' plain impropriety and overbreadth, the Subpoena's extremely
broad and expansive boilerplate definitions further evince a failure to tailor the requests to the
discovery of relevant information or to minimize the burden on a nonparty.

For instance, "PETA FOUNDATION" is defined to include any employee ("agent"), any
affiliate, or any other entity that has ever been retained or acted on PETA Foundation's behalf: "all
of its affiliates, parents, divisions, joint ventures, licensees, franchisees, agents, assigns,
predecessors and successors in interest, and any other legal entities that are owned or controlled
by it, or that have acted on its behalf, and all predecessors and successors in interest to such
entities."  Ex. A, at Definition 2.  "DOCUMENT" includes "without limitation, all written, graphic
or otherwise recorded material," such as for instance, "books, records, accounts . . . notes of
conversations, notes of telephone calls . . . recordings of conversations either in writings or upon
any mechanical or electrical recording devices, . . . invoices, canceled checks or check stubs, . . .
time sheets, diaries, desk calendars, ledgers . . . financial statements, telephone bills . . ."  *Id.* at
Definition 5.  The Subpoena did not even include a time limitation on any of its requests; it only
offered to limit the applicable time period after receiving PETA Foundation's objections.

These are not definitions aimed at "avoid[ing] imposing undue burden or expense on a
person subject to the subpoena."  Fed. R. Civ. P. 45(d)(1).  They are not tailored to identifying and
requesting likely relevant information.  *See Jordan*, 921 F.3d at 190 ("A nonparty should not have
to do the work of tailoring a subpoena to what the requesting party needs; the requesting party

should have done that before serving it.")  Instead, they are plainly designed to expand and maximize the breadth of the Subpoena, and thereby the burden of compliance.

### 4.  THE SUBPOENA IMPOSES A DISPROPORTIONATE BURDEN

Discovery must be both "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).  "[E]ven relevant information may not be discoverable if it is not 'proportional to the needs of the case.'"  *Gilmore*, 339 F.R.D. at 120 (quoting Fed. R. Civ. P. 26(b)(1)). Proportionality considerations include, among others, "the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  *Id*.  Proportionality concerns are especially heightened for a nonparty.  *See Gilmore*, 339 F.R.D. at 120; *Jordan*, 921 F.3d at 189.

Complying with the Subpoena would impose a substantial burden.  Based on just one potential email search term, PETA Foundation estimates it would need to dedicate at least two full attorney-weeks (over 100 attorney hours) to review, identification, and production of documents—however, if required to comply, far more documents and therefore attorney time will likely be required.  Decl ¶ 29.  Additional searches would likely need to be run, and additional sources of documents (beyond email alone) may need to be identified and searched.  *Id.* at ¶ 27.  Since Request 3 demands a review and privilege logging of every file in PETA Foundation's possession that relates in any way to, comments on or references the Lawsuit, it likely requires review and cataloging of PETA Foundation's entire litigation file.  *Id.* at ¶¶ 13-16.  This would sweep in thousands of documents, likely substantially expanding the size of the required review.  *Id.*  And since most of these documents are likely to be privileged, a lengthy privilege log will likely need to be generated, substantially increasing the resource investment required.  *Id.* ¶¶ 18–19.

This investment would require a diversion of PETA Foundation's scarce litigation counsel resources.  *Id.* ¶¶ 30–32.  PETA Foundation lawyers are currently fully staffed on work.  Thus the

PETA Foundation lawyer, or lawyers, assigned to the subpoena response would be rendered unavailable to accomplish other legal work for PETA Foundation's clients, likely resulting in delayed or reduced legal services to those clients. *Id.* Alternatively, if PETA Foundation were to retain outside counsel to assist in the review and production, this is also likely to impose a substantial burden. Based on just the electronic mail search alone (and recognizing that many additional searches and sources would likely be required), an outside retention is estimated to cost PETA Foundation over $20,000. *Id.* ¶ 33.[6]

But "the dollars-and-cents costs associated with a large and demanding document production" are not the only cognizable burden. *Jordan*, 921 F.3d at 189. For instance: "a subpoena may impose a burden by invading privacy or confidentiality interests," or by serving "overbroad" requests "seek[ing] information beyond what the requesting party reasonably requires." *Id.* at 189–90. Here, in addition to imposing resource costs of compliance, the Subpoena invades substantially into opposing counsel's privileged files to demand production of their entire litigation file, as well as correspondence with another of its legal clients. It is also plainly overbroad. The invasive, inappropriate, and overbroad nature of the requests adds to their "dollars

---

[6] While PETA Foundation urges this Court to quash the Subpoena in its entirety, if the Court requires compliance with the Subpoena or any portion thereof, PETA Foundation requests this Court also order Vital Farms to pay for the cost of compliance. Rule 45(d)(2)(B)(ii) requires that, where a court orders compliance with a subpoena over objections, "the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." Here, PETA Foundation faces the likelihood of "significant expense" if required to comply with the Subpoena. *See Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1184–85 (9th Cir. 2013) (nonparty's expense of $20,000 was significant and required compensation under Rule 45). The costs required to review, withhold and log for privilege, and produce materials pursuant to the Subpoena are exactly the expenses eligible for compensation under this Rule. *In re Am. Nurses Ass'n*, 643 F. App'x 310, 314 (4th Cir. 2016) ("attorney's fees incurred by the non-party that are necessary to a discovery proceeding under Rule 45 are expenses that may be shifted to the discovery-seeking party").

and cents" burden and further renders the Subpoena disproportionate to the needs of the case, and unduly burdensome.

## 5. THE SUBPOENA WAS ISSUED FOR AN IMPROPER PURPOSE

Discovery must not be "interposed for any improper purpose, such as to harass . . . or needlessly increase the cost of litigation," or to "annoy[ ], embarrass[ ], or oppress[ ]" the recipient. Fed. R. Civ. P. 26(g)(1)(B)(ii) & *id.* 26(c)(1).  Here, the context of the Subpoena and its plain language make clear that it was issued for an improper purpose: to obtain an improper advantage in ongoing litigation by demanding all of opposing counsel's litigation file; to retaliate against PETA Foundation for representing plaintiffs in the Lawsuit; and to harass and burden opposing counsel's employer because of its perceived affiliation with a corporate adversary.

The underlying litigation makes Vital Farms' aim abundantly clear.  Vital Farms has railed against PETA Foundation throughout the Lawsuit, alleging a nefarious and unfounded conspiracy with PETA.  *Supra* § II.2.  It has sought to bar PETA Foundation attorneys from accessing material relevant to the case—even material produced by non-parties—that Vital Farms deems confidential. *Id*.  It demands production of PETA Foundation's privileged litigation file, as well as any communication it may have had with PETA, its legal client, so much as mentioning Vital Farms.

This is not a subpoena designed to lead to relevant discovery for the underlying Lawsuit: it is a bald attempt to gain privileged documents, and a fishing expedition to uncover any statements a perceived adversary may have said about it.  Vital Farms' own explanation for its Subpoena makes clear that it targets PETA Foundation because it targets PETA and perceives that the two are intertwined.  Letter at 8 ("PETA and the Foundation are inherently intertwined . . . Because of their close relationship (which again includes the Foundation providing functions like IT and media to PETA) . . . Vital Farms must obtain discovery from the Foundation.")  But subpoenaing and burdening opposing counsel because of a perceived affiliation with another

disfavored entity is improper.  *See, e.g., F.D.I.C. v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1314 (5th Cir. 1995) (observing "the right of a party to his counsel of choice").

Vital Farms' own statements about the purpose of the Subpoena only further reveal its ill intent.  Vital Farms claims "*the litigation has shown* that the Foundation, either separately or in conjunction with PETA, seeks to shape consumer demand for eggs, including Vital Farms' eggs. In this way, the Foundation is a market participant and even competitor to Vital Farms."  Letter at 9 (emphasis added).  Thus, Vital Farms accuses PETA Foundation of being a "market participant"—which it claims somehow justifies receiving the burden of a subpoena—and it claims that PETA Foundation should be considered as much *because it brought the Lawsuit*, which will "shape consumer demand for eggs."  First, this is a clear indication of retaliatory discovery, issued (i) in punishment for PETA Foundation's legitimate use of the legal process, and (ii) in punishment for PETA Foundation's "market participat[ion]" which may hinder its egg sales.

Second, the claim that a nonprofit organization's public interest advocacy or litigation somehow renders itself a "market participant" because its lawyers join in suing a corporation is ludicrous and stands in sharp contrast to First Amendment doctrine, which makes clear that political advocacy (even including advocacy of boycotts) is distinct from for-profit market competition.[7]

Third, this position would have dangerous impact.  It is not uncommon for non-profit

---

[7] *See, e.g.*, *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 926 (1982) ("liability may not be imposed on Evers for . . . his active participation in the boycott itself. To the extent that Evers caused respondents to suffer business losses through his organization of the boycott, his emotional and persuasive appeals for unity in the joint effort, or his 'threats' of vilification or social ostracism, Evers' conduct is constitutionally protected and beyond the reach of a damages award."); *see also New York Times Co. v. Sullivan*, 376 U.S. 254, 266 (1964) (paid advertisement is not "commercial" speech when expressing ideas and support for "a movement whose existence and objectives are matters of the highest public interest and concern").

lawyers or advocacy groups to represent plaintiffs in litigation against commercial parties.  For instance, the AARP represents elderly people in litigation alleging misconduct against the elderly, like insurance providers and adult care facilities.[8]  The AARP has not thereby been transformed into a "market participant" in each of those fields, subject to subpoena any time an insurance provider or adult care facility it has mentioned is sued.  Nor has PETA Foundation's attorneys' participation as plaintiffs' counsel in the Lawsuit justified permitting its opposing counsel to conduct a fishing expedition into its case files by "shap[ing] consumer demand for eggs."

### 6.    VITAL FARMS' ABUSIVE SUBPOENA SHOULD BE SANCTIONED

"A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." Fed. R. Civ. P. 45(d)(1).

In light of the facially invalid and improper Subpoena, which as explained *supra* is specifically drafted to seek opposing counsel's litigation file, and not tailored to the production of nonprivileged relevant information, Vital Farms failed to comply with its basic duty "to avoid imposing undue burden or expense on" nonparty PETA Foundation.  Attorney fees incurred in opposing this improper Subpoena are an appropriate sanction.  *See Med. Components, Inc. v. Classic Med., Inc.*, 210 F.R.D. 175, 179 (M.D.N.C. 2002) (awarding attorney fees where party

---

[8] *See, e.g.*, *Current Docket Litigation Cases*, AARP Foundation, https://www.aarp.org/aarp-foundation/our-work/legal-advocacy/afl-docket-recent-litigation-cases/ (last visited Dec. 28, 2022); *Class Action Seeks to protect Vulnerable Alden Nursing Facility Residents from Neglect and Preventable Injuries Due to Intentional and Dangerous Understaffing*, AARP Foundation, press.aarp.org (Sept. 28, 2022), https://press.aarp.org/Class-Action-Seeks-to-Protect-Vulnerable-Alden-Nursing-Facility-Residents-from-Neglect-and-Preventable-Injuries-Due-to-Intentional-and-Dangerous-Understaffing.

issued overbroad nonparty subpoena, "breached its duty" under Rule 45 "and unreasonably imposed a substantial and unnecessary burden on [the nonparty] and this Court"). And Vital Farms exacerbated its violation by refusing to withdraw or narrow the subpoena in any meaningful way after the flaws and burdens of compliance were brought to its attention.

## V. CONCLUSION

For the above-stated reasons, this Court should grant PETA Foundation's Motion to Quash Vital Farms' Nonparty Subpoena.

Respectfully submitted,

Dated: December 30, 2022

*/s/ D. McNair Nichols*
D. McNair Nichols (VA Bar No. 92431)
K&L GATES LLP
430 Davis Drive, Suite 400
Morrisville, NC 27560
P: (919) 466-1117
F: (919) 831-7040
McNair.NicholsJr@klgates.com

Edward P. Sangster (CA Bar No. 121041)[9]
K&L GATES LLP
Four Embarcadero Center
Suite 1200
San Francisco, CA 94111
Telephone: (415) 882-8200
Facsimile: (415) 882-8220
Edward.Sangster@klgates.com

Melissa R. Alpert (Pa. I.D. 330638)[10]
K&L GATES LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222
P: (412) 355-3779
F: (412) 355-6501

---

[9] *Pro Hac Vice Motion forthcoming.*

[10] *Pro Hac Vice Motion forthcoming.*

Melissa.Alpert@klgates.com

*Counsel for Foundation to Support Animal Protection d/b/a PETA Foundation*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 30, 2022, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system.  A copy, including supporting declarations, was served by email to the following:

Abby Meyer
SHEPPARD MULLIN
650 Town Center Drive
Tenth Floor
Costa Mesa, CA 92626
P: (714) 513-5100
F: (714) 513-5130
ameyer@sheppardmullin.com

Alyssa Sones
SHEPPARD MULLIN
1901 Avenue of the Stars
Suite 1600
Los Angeles, CA 90067
P: (424) 288-5305
F: (310) 228-3980
asones@sheppardmullin.com

*Counsel for Vital Farms, Inc.*

/s/ D. McNair Nichols
D. McNair Nichols (VSB No. 92431)
K&L GATES LLP
430 Davis Drive, Suite 400
Morrisville, NC 27560
P: (919) 466-1117
F: (919) 831-7040
McNair.NicholsJr@klgates.com

*Counsel for Foundation to Support Animal
Protection d/b/a PETA Foundation*

24